IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | |
| CELESTICA CORPORATION | ) ) | COMPLAINT |
| Defendant. | ) ) ) ) | JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct employment practices made unlawful by the Americans with Disabilities Act and to provide appropriate relief to Lillian G. Bryan who was adversely affected by those unlawful practices. As alleged with greater particularity below, Plaintiff Equal Employment Opportunity Commission ("the Commission") alleges that Defendant Celestica Corporation failed to provide Ms. Bryan with reasonable accommodations of a wheel chair and a parking space, and Defendant interfered with Ms. Bryan's attempt to obtain those reasonable accommodations.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. §§2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the Middle District of Tennessee, Nashville Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Celestica Corporation ("Celestica") has continuously conducted business in the State of Tennessee and the City of Mount Juliet. Defendant Employer has continuously had at least fifteen employees.

5. At all relevant times, Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 101(5) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 701 (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (g) and (h).

6. At all relevant times, Defendant Employer has been a covered entity within the meaning of Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

2

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Lillian G. Bryan filed a charge of discrimination alleging violations of the ADA by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. Since at least approximately May 8, 2007, Defendant Employer has engaged in unlawful employment practices in violation of Section 102 of the ADA, 42 U.S.C. Section 12112 and 12203(b).

9. The unlawful employment practices involved not making reasonable accommodations to Lillian G. Bryan whom Defendant Celestica knew had a known physical disability.

    a. The Commission alleges that Ms. Bryan is a qualified individual with a disability under the definition of the Americans with Disabilities Act of 1990. She has Lupus, Cardiomyopathy, and Chronic Obstructive Pulmonary Disease. As a result of her condition, she is substantially limited in the major life activities of standing, walking and breathing.

    b. Approximately April 2006, Ms. Bryan applied for a job and was hired by J.C. Malone & Associates (Malone) effective May 1, 2006. Malone is a placement company and placed Ms. Bryan at a warehouse operated by Celestica Corporation (Celestica) as its Order Management Specialist. At all times, J.C. Malone & Associates was acting as an agent of Celestica Corporation.

    c. Ms. Bryan had previously worked at the same site for BAX Global (BAX) as an Order Management Specialist. BAX operated a warehouse on behalf of Dell Computer Corporation (Dell). BAX received shipments of computer printers at the

warehouse which it then remanufactured and repackaged for Dell before shipping them to Dell. Ms. Bryan's job was to receive orders of computer printers from Dell and expedite their fulfillment in 45 minutes. At some time in April 2006, BAX lost the contract to operate the warehouse for Dell to Celestica. At that time, BAX informed its employees that they might transfer to other BAX operations or else reapply for their positions at the warehouse with Celestica. At this time, Ms. Bryan was an employee of BAX and had health insurance coverage through her employment with BAX.

    d.    After being hired by Malone and working at the warehouse operated by Celestica, Ms. Bryan's job duties remained the same. Ms. Bryan remained an Order Management Specialist who received orders for computer printers from Dell. When she received an order from Dell, Ms. Bryan's job was to expedite fulfillment of that order in 45 minutes.

    e.    Although Ms. Bryan was an employee of Malone, Celestica supervised and controlled all of Ms. Bryan's job duties. Celestica controlled all of the conditions of her workplace. Celestica also controlled her employment because it could decide that Ms. Bryan would not be allowed to work at the warehouse. Malone had a supervisor stationed at the warehouse, but this supervisor did no more than receive requests from Malone employees for days off and other requests similar to what a human resources manager would process. Malone had no involvement in the operations of the warehouse, which were entirely in the control of Celestica.

    f.    By its contract with Malone, Celestica insisted that none of the Malone employees were Celestica employees. On the other hand, Celestica agreed to provide a worksite complying "with all applicable statutes and ordinances relating to the worksite

4

including, but not limited to OSHA and the ADA." Meanwhile, Malone paid Ms. Bryan for her work.

g. In or about June or July 2006, Celestica ordered Ms. Bryan to move from her desk in the shipping office of the warehouse to a desk on the floor at the southeast corner of the warehouse.

h. Celestica ordered Ms. Bryan to move to a desk on the warehouse floor because forklift drivers, who would be moving the computer printers for fulfillment of Dell orders, would no longer have to go to her office to get their orders and she would not have to walk orders to the shipping dock. Moving Ms. Bryan to the warehouse floor saved about one minute of walking for either Ms. Bryan or the forklift drivers.

i. Ms. Bryan was diagnosed with cardiomyopathy in 1996 after she had suffered a heart attack. Ms. Bryan was diagnosed with lupus in 2006. Lupus is a disease in which the autoimmune system attacks good muscle tissue. Her doctors suspect that lupus caused Ms. Bryan's weak heart. In addition, Ms. Bryan was diagnosed with chronic obstructive pulmonary disease (COPD). COPD means that Ms. Bryan has difficulty breathing.

j. In or around the beginning of May 2007, Dr. Mitchell Pullias wrote a note for Ms. Bryan. In this note, Dr. Pullias stated that Ms. Bryan had cardiomyopathy, COPD and lupus. As a result, Dr. Pullias wrote that Ms. Bryan would occasionally need to use an electric wheelchair. Dr. Pullias wrote that Ms. Bryan should use an electric wheelchair at her discretion and as needed on a daily basis.

k. On or around May 8, 2007, Ms. Bryan asked for a reasonable accommodation. She asked to be allowed to use an electric wheelchair inside the

warehouse which she herself would purchase. When BAX had operated the warehouse, there had been a golf cart which Ms. Bryan and other managers had used to travel around the warehouse. This golf cart had been removed sometime before Celestica arrived.

l.   The warehouse is about 400,000 square feet. The main entrance of the warehouse is at the north end of the warehouse. Ms. Bryan's desk was at the southeast corner of the warehouse. From the main entrance to Ms. Bryan's desk, the distance might be about a quarter of a mile. The main entrance would be closed during a night shift. At such times, Ms. Bryan had to enter through a side entrance on the west side of the warehouse. In addition, piles of pallets and other goods prevented Ms. Bryan from walking directly from the side entrance to her desk. The distance from the side entrance to Ms. Bryan's desk might be about half a mile.

m.   On or about May 8, 2007, Ms. Bryan sent an e-mail requesting a reasonable accommodation to Keith Wallace, Malone's supervisor at the warehouse at the time, and to Robert Beverly, Celestica's human resources manager. Ms. Bryan also gave her note from Dr. Pullias to Wallace. Wallace believed that the accommodations were reasonable and contacted his supervisor at Malone's corporate office. His supervisor agreed, but advised Wallace that Celestica would have to approve.

n.   About two weeks later, Wallace advised Ms. Bryan to send the e-mail again but with a blind copy to Sergio Ruiz, Celestica's operations manager at the time.

o.   Beverly never responded to Ms. Bryan's e-mails. Celestica denied the request because Ms. Bryan would be a liability risk if she was allowed to use an electric wheelchair inside the warehouse.

6

p. When Ms. Bryan learned that she would not be allowed to use an electric wheelchair, she asked Wallace if she could have a handicapped parking space near the side entrance. There are handicapped parking spaces at the main entrance. When Ms. Bryan worked at night, the main entrance was closed. She would have to park at the security guard's gate near the northwest corner of the warehouse, go through the gate at the security fence and then walk to the side entrance on the west side of the warehouse. There were no handicapped parking spaces at the security guard's gate. If Ms. Bryan could not park at the security guard's gate, she would have to park at the main entrance and walk from there to the security guard's gate.

q. Celestica has insisted that there was no need for a handicapped parking space near the side entrance because handicapped parking spaces were already available at the main entrance.

r. In or around July 2007, Ms. Bryan again requested a reasonable accommodation, use of an electric wheelchair. On information and belief, the request was forwarded to Celestica officials and Malone's supervisor at the time. The request was denied again by Defendant.

s. After Ms. Bryan's requests were denied, Ms. Bryan continued working at the warehouse. Nevertheless, Ms. Bryan would suffer what she calls "flare ups." At those times, her medical conditions would worsen and she would have difficulty breathing and walking. At one point, Ms. Bryan collapsed on the warehouse floor and had to be carried the rest of the way on a desk chair. At other times, forklift drivers would give Ms. Bryan a ride on their forklifts across the warehouse. When Celestica's management saw Ms. Bryan riding on a pallet carried by a forklift, she was informed

that she was not to ride a forklift. When Ms. Bryan rode in a "cattle cage", an apparatus designed for people to ride while being carried by a forklift, management again informed her that she was not to ride a forklift.

t.  On or about August 12, 2007, Ms. Bryan collapsed at her desk. On or about August 15, 2007, Ms. Bryan was unable to get up and go to work. At that time, Ms. Bryan was hospitalized. Thereafter, Ms. Bryan informed Defendant that she could no longer work at the warehouse.

10.  The effect of the practices complained of in paragraphs 9a through t above has been to deprive Ms. Bryan of equal employment opportunities and to otherwise adversely affect her status as an employee in violation of the ADA.

11.  The unlawful employment practices complained of in paragraphs 9a through t above were and are intentional.

12.  The unlawful employment practices complained of in paragraphs 9a through t above were and are done with malice or with reckless indifference to the federally protected rights of Ms. Bryan.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant Employer, its officers, agents, employees, attorneys, assigns, and all persons in active concert or participation with it, from failing to provide reasonable accommodations to the known disability of its employees.

B.  Order Defendant Employer to institute and carry out policies, practices, and programs which provide such reasonable accommodations and which eradicate the

effects of its past and present unlawful employment practices.

C. Order Defendant Employer to make whole Ms. Bryan who was adversely affected by Defendant's illegal actions described above, by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices.

D. Order Defendant Employer to make whole Ms. Bryan by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 9a through t above in amounts to be determined at trial.

E. Order Defendant to make whole Ms. Bryan by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in paragraphs above 9a through t including, in amounts to be determined at trial.

F. Order Defendant Employer to pay Ms. Bryan punitive damages for its malicious and reckless conduct described in paragraphs 9a through t above, in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

JAMES LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel
Washington, DC


*Faye A. Williams by MC w/permission*
FAYE A. WILLIAMS
Regional Attorney
Tennessee Bar No. 011730


*Deidre Smith by MC w/permission*
DEIDRE SMITH
Supervisory Trial Attorney
Tennessee Bar No. 018499

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
1407 Union Avenue, 9th Floor
Memphis, TN 38104
Telephone: (901) 544-0140


*Mark H. Chen*
MARK CHEN
Trial Attorney
Tennessee Bar No. 014268


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
50 Vantage Way
Nashville, TN 38104
Telephone: (615) 736-5784